UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KYLE MARK LAWRENCE, § | |
| § | |
| *Appellant*, § | |
| § | |
| v. § | Civil Action No. 3:19-CV-01843-X |
| § | |
| FROST BANK, § | |
| § | |
| *Appellee*. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Appellant Kyle Mark Lawrence's Appeal of the Findings of Fact, Conclusions of Law and Judgment of the United States Bankruptcy Court for the Northern District of Texas, pursuant to 11 U.S.C. § 523(a)(2)(A).  [Doc. No. 1]. After an evidentiary trial, the Bankruptcy Court concluded that Frost Bank had established a nondischargeable claim against Lawrence.[1]  Having considered the relevant pleadings, the Court **AFFIRMS** the Bankruptcy Court's decision in its entirety.

### I.   Background

The Bankruptcy Court found the following: as of July 30, 2017, Lawrence was the sole owner and member of Lawrence Built, LLC, a roofing company that sometimes operated under the assumed name LB Commercial Roofing.  Starting in January 2016, Lawrence Built obtained the following loans from Frost Bank, in order: (1) a revolving line of credit ("the Credit Loan"); (2) a promissory note secured by an

---

[1] Doc. No. 1-1 at 8–9.

1

interest in two trucks Lawrence Built owned ("Note 1"); (3) another promissory note secured by an interest in another truck Lawrence Built owned, certain related items then owned or thereafter acquired, and a personal guarantee of repayment of all indebtedness ("Note 2"); and (4) yet another promissory note, which renewed and replaced the Credit Loan, secured by an interest in "all inventory and accounts of the Borrowing Entity, then owned or thereafter acquired, as well as related assets and rights" ("Note 3").  Lawrence Built executed Note 3 in March 2017 after consulting about Lawrence Built's financial issues with Frost Bank and never made a single payment on the note.

Shortly after meeting with Frost Bank in March 2017, Lawrence formed an entirely new commercial entity named LB Commercial Roofing, LLC ("LB Roofing") and abandoned that name as an assumed name for Lawrence Built.  Frost Bank filed a notice of default and demand against Lawrence and Lawrence Built in May 2017 that allowed it to accelerate repayment.  Around that time, Lawrence decided that he and Lawrence Built would file for Chapter 7 bankruptcy and did so on July 30, 2017.

But that's not all.  In November of 2016, after the execution of the Credit Loan, Note 1, and Note 2, Lawrence Built subcontracted with a construction company to help build a Gold's Gym.  It did so using the assumed name LB Commercial Roofing.  And (so Frost Bank alleged) Lawrence Built eventually diverted revenue from this construction project to Lawrence's new entity, LB Roofing, seemingly without informing Frost Bank or the construction company.  Lawrence Built did the same thing to another construction company when subcontracting to help build a Dunkin'

Donuts restaurant in April 2017. And Lawrence repeated this pattern with other clients. Lawrence even diverted some of the funds from his LB Roofing venture into a personal account he didn't disclose in his original bankruptcy filing and transferred a number of intangible assets from Lawrence Built to LB Roofing.[2]

Once it found out about all this, Frost Bank sued Lawrence in bankruptcy court, seeking to "establish its breach-of-contract claim against Mr. Lawrence . . . and, also, have the court declare its claim against Mr. Lawrence to be nondischargeable . . . ."[3] The bankruptcy court found that Frost Bank had established a claim against Lawrence, and that that claim was nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code because Lawrence "made false representations, material omissions, and committed actual fraud in connection with [Lawrence's] extension and renewal of credit and in thereafter converting Frost Bank's collateral."[4] Lawrence appealed the bankruptcy court's ruling to this Court.[5]

## II. Legal Standard

District courts (like this Court) have jurisdiction to hear appeals from final judgments of bankruptcy courts.[6] The Court reviews the bankruptcy court's findings

---

[2] LB Roofing used the same logo, phone number, website address, and trademarked slogan as Lawrence Built. *See* [Doc. No. 1-1] at 28–29.

[3] *Id.* at 8.

[4] *Id.* at 8–9.

[5] [Doc. 1].

[6] 28 U.S.C. § 158(a)(1).

of fact for clear error and conclusions of law de novo.[7] The Court finds clear error when "upon examination of the entire evidence [the Court] is left with the definite and firm conviction that a mistake has been committed."[8]

### III. Analysis

Argument-wise, Lawrence throws everything but the kitchen sink at the bankruptcy court's judgment. He argues that the Bankruptcy Court erred in the following ways (hereafter, "issues"):

1. Finding that Frost Bank had standing to sue;

2. Finding that Lawrence made knowing false representations to Frost Bank;

3. Finding that Frost Bank justifiably relied on any representations found to have been made by Lawrence;

4. Dismissing Lawrence's counterclaim regarding Frost Bank's state-court lawsuit against LB Roofing;

5. Dismissing Lawrence's affirmative defense of offset and credit;

6. Finding that any payments to Lawrence constituted Frost Bank's collateral;

7. Finding that the accounts receivable was the "asset transferred," and not the project contract;

---

[7] *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008).

[8] *Justiss Oil Co., Inc. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996).

8. Finding that the agreement with Cross Timbers Church (another client of Lawrence's) was with Lawrence Built, not LB Roofing;

9. Finding and calculating damages;

10. Declaring the total amount of contractual debt non-dischargeable even though the bankruptcy court found no alleged false representations made prior to Note 1 and Note 2's execution;

11. Declaring any amount of the debt non-dischargeable when the bankruptcy court didn't see any evidence of Note 3's outstanding balance;

12. Allowing evidence outside the scope of the complaint;

13. Considering purportedly fraudulent actions occurring after Lawrence's bankruptcy petition;

14. Finding actual fraud;

15. Finding that a fraudulent conveyance scheme can stand without an actual fraudulent conveyance under Texas or federal law;

16. Disallowing Lawrence's knowledge-and-intent testimony;

17. Disallowing testimony from two check signers;

18. Allowing bank statements into evidence with no business-records affidavit;

19. Admitting several evidentiary exhibits based on a supposedly defective business-records affidavit;

20. Inappropriately commenting on the alleged credibility of witnesses without stating the basis for said comments; and

21. Limiting the amount of time for Lawrence to present his case in chief to less time than Frost Bank's.

The Court will address each issue in turn.

### A. Standing to Sue (Issue 1)

The bankruptcy court concluded that Frost Bank had standing to sue because it had stated a claim against Lawrence under section 523(a)(2) of the Bankruptcy Code.[9] The Court reviews this conclusion of law de novo.

Lawrence argues that Frost Bank doesn't have standing because no fraudulent conveyance scheme existed, and even if fraud or conversion was committed, Lawrence Built committed it, and Frost Bank never argued it could "pierce the veil" and reach Lawrence.[10] Frost Bank retorts that the Bankruptcy Court properly found actual fraud, and because "a corporation's employee is personally liable for tortious acts which he directs or participates in during his employment[,]"[11] Frost Bank has standing to sue Lawrence.[12]

---

[9] [Doc. 1-1] at 30.

[10] [Doc. 17] at 21–26.

[11] *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984).

[12] [Doc. 28] at 15–24. Frost Bank pointed out that it didn't need to "pierce the veil" under Texas law to hold Lawrence accountable because Lawrence signed the guaranty in his individual capacity. *See id*. at 19.

Section 523(a)(2)(A) requires a showing of "false pretenses, a false representation, or actual fraud" in order to establish standing.[13] As detailed in the Court's discussion of Issue 14 and 15 below, the Court finds no clear error in the Bankruptcy Court's findings of fact that Lawrence committed actual fraud and participated in fraudulent conveyance. And the Court finds that the Bankruptcy Court's factual findings compel its legal conclusions regarding standing. So the Court affirms the decision below for the reasons in the Bankruptcy Court's Findings of Fact and Conclusions of Law.

### B.  False Representations (Issue 2)

Lawrence next argues that any representation he made to Frost Bank about Lawrence Built's financial situation or his commitment to Lawrence Built's future success was unknowing, mere puffery, or not false when he made them.[14] Frost Bank counters that Lawrence repeatedly misrepresented both his future commitment to Lawrence Built and his ability to repay his loans.[15] The Court, reviewing for clear error the Bankruptcy Court's judgment that Frost Bank had met its burden of showing that Lawrence made false representations, finds no error and affirms the Bankruptcy Court's findings of fact on this point.

---

[13] 11 U.S.C. § 523.

[14] [Doc. 17] at 27–36.

[15] [Doc. 28] at 27–33.

### C. Justifiable Reliance on Representations (Issue 3)

Lawrence next argues that Frost Bank could not have justifiably relied on Lawrence's oral representations because the written documents he provided to them showed a large net loss in Lawrence Built's profits, and because as a "sophisticated financial institution," Frost Bank should have been able to determine from those documents that Lawrence Built would become insolvent.[16] Frost Bank states that it had no reason to doubt Lawrence could timely repay his obligations, and its reliance on Lawrence's representations was justified.[17]

The Court finds no clear error in the Bankruptcy Court's determination that Frost Bank justifiably relied on Lawrence's misrepresentations about Lawrence Built. Thus, the Court affirms the Bankruptcy Court on this issue.

### D. Dismissal of Counterclaim (Issue 4)

Lawrence next argues that the Bankruptcy Court erred in dismissing his counterclaim against Frost Bank for violating an injunction and automatic stay by filing a state court action against LB Roofing.[18] Frost Bank points out that "[t]he protections afforded to Lawrence in his bankruptcy proceeding did not apply to [LB Roofing]."[19] The Court agrees, and for that reason finds no clear error in the Bankruptcy Court's determination and affirms the decision below.

---

[16] [Doc. 17] at 37–39.

[17] [Doc. 28] at 32–33.

[18] [Doc. 17] at 40–41; *see* 11 U.S.C. § 362(a)(1) (subjecting actions "to recover a claim against the debtor" to the automatic stay).

[19] [Doc. 28] at 34.

### E. Dismissal of Affirmative Defense (Issue 5)

Continuing on, Lawrence argues that the Bankruptcy Court improperly dismissed his affirmative defense of "offset and credit."[20] Frost Bank returns fire: "Lawrence's affirmative defenses were bereft of fact, did not meet the plausibility standard for proper pleadings, and did not give Frost [Bank] fair notice."[21] The Court has examined the facts, and finds no clear error in the Bankruptcy Court's findings on this issue. The Court therefore affirms the Bankruptcy Court's decision.

### F. Whether Payments Were Collateral (Issue 6)

Lawrence disputes that the Bankruptcy Court properly found that five checks issued to Lawrence Built by its various clients constituted Frost Bank's collateral.[22] Frost Bank responds by correctly pointing out that the Bankruptcy Court had actually held that Lawrence improperly diverted funds from eight separate checks.[23] The Court has also examined the Bankruptcy Court's factual holdings, and finds no clear error. The Court affirms the decision of the Bankruptcy Court on this matter.

### G. Asset Transferred (Issue 7)

Next Lawrence argues that the Bankruptcy Court erred in finding that the revenue LB Roofing[24] received from performing several jobs was the "asset

---

[20] [Doc. 17] at 42–43.

[21] [Doc. 28] at 36.

[22] [Doc. 17] at 44–47.

[23] [Doc. 28] at 38–43.

[24] The bankruptcy court found that these jobs were performed by Lawrence Built using the alias LB Commercial Roofing. *See supra* p. 1. The Court finds no clear error in this determination.

transferred" for purposes of fraudulent transfer, as opposed to the project contracts.[25] Frost Bank pointed out that the security agreement listed collateral as including Lawrence Built's accounts, and noted Lawrence had cited no evidence or caselaw demonstrating that Frost Bank's collateral was the project contracts rather than the accounts receivable proceeds.[26] The Court's examination of the facts uncovers no clear error in the Bankruptcy Court's determination that the accounts receivable proceeds, not the project contracts, was the asset fraudulently transferred in this case, and for that reason affirms the Bankruptcy Court's findings of fact on this point.

### H.     The Cross Timbers Church Agreement (Issue 8)

Lawrence asserts that the Bankruptcy Court incorrectly found that Cross Timbers Church contracted with Lawrence Built, not LB Roofing.[27] Because the Bankruptcy Court didn't clearly err on this point based on the facts presented, the Court affirms its decision.

### I.     Damages (Issue 9)

Next Lawrence contests the Bankruptcy Court's finding and calculation of damages because its assessment "focuses solely on revenue and ignores expenses incurred in obtaining such revenue."[28] Frost Bank responds that it showed at trial that Lawrence owed debt to Frost Bank that he admitted he had not repaid, and that

---

[25] [Doc. 17] at 48.

[26] [Doc. 28] at 43–45.

[27] [Doc. 17] at 49.

[28] [Doc. 17] at 50–52.

Lawrence was bringing forth this argument for the first time.²⁹  The Court finds no clear error in the Bankruptcy Court's finding and calculation of damages, and therefore affirms its decision.

### J.    Non-Dischargeability of Contractual Debt (Issues 10 and 11)

Section 523(a)(2)(A) requires debt to be obtained by "false pretenses, a false representation, or actual fraud" in order to be considered nondischargeable.³⁰ Lawrence argues that because any alleged misrepresentations he made occurred after Note 1 and Note 2's debt arose, the debt under those notes is dischargeable and the bankruptcy court erred in determining otherwise.³¹  Lawrence also asserts that the bankruptcy court erred by finding the debt under Note 3 nondischargeable "when no evidence of the outstanding balance of Note 3 was presented to the court."³²  Frost Bank argues in response that all of Lawrence's debts were renewed and extended through Note 3 and a security agreement that they entered into based on Lawrence's misrepresentations, and thus his debts were obtained by "false representation."³³ The Court considers this a question of fact, because the plain text of section 523 makes debt obtained through false representation nondischargeable.  And finding no clear error in the Bankruptcy Court's examination of the facts, the Court affirms the decision of the lower court respecting the nondischargeability of Lawrence's debts.

---

²⁹ [Doc. 28] at 47–49.

³⁰ 11 U.S.C. § 523.

³¹ [Doc. 17] at 53.

³² *Id.* at 54.

³³ [Doc. 28] at 52–54.

11

### K.    Evidentiary Arguments (Issues 12, 13, and 20–23)

Lawrence marshals a host of evidentiary arguments against the Bankruptcy Court. He asserts that it erred by (1) allowing evidence outside the complaint's scope, (2) considering actions that happened after Lawrence petitioned for bankruptcy, (3) disallowing Lawrence's testimony, (4) disallowing other witness testimony, and (5) allowing documents and other exhibits into the record without a valid business records affidavit.[34] Frost Bank, unsurprisingly, argues that the Bankruptcy Court made the correct evidentiary determinations.[35]

The Court reviews evidentiary decisions by the bankruptcy court under an abuse-of-discretion standard.[36] When the Court does so, it finds based on the facts of the case and the arguments presented that the Bankruptcy Court was well within its discretion to reach the evidentiary decisions it did. The Court accordingly affirms the decisions of the Bankruptcy Court on these evidentiary matters.

### L.    Actual Fraud (Issue 14)

As mentioned above,[37] the Bankruptcy Court found that Frost Bank had shown that Lawrence committed actual fraud. Reviewing for clear error, the Court finds that the Bankruptcy Court did not err, and accordingly affirms the decision.

---

[34] [Doc. 17] at 56–59, 65–68.

[35] [Doc. 28] at 25–27, 54–70.

[36] *In re Repine*, 536 F.3d 512, 518 (5th Cir. 2008).

[37] *See supra* p. 7.

## M.     Fraudulent Transfer (Issue 15)

Lawrence argues the Bankruptcy Court erred by "not requiring that any 'fraudulent transfer scheme' be accompanied by a fraudulent transfer as that term is defined under Texas law."[38]  The Bankruptcy Court indeed found that "Lawrence perpetrated a fraudulent scheme" by transferring funds from Lawrence Built into LB Roofing's accounts.  Essentially, it ruled, Lawrence "siphoned off all assets and business from [Lawrence Built] to [LB Roofing] as soon as Frost Bank started turning up the heat."[39]  The Court finds no clear error in these findings of fact, and accordingly affirms the Bankruptcy Court's decision below.

## N.     The Bankruptcy Court's Comments (Issue 25)

Lawrence argues that the Bankruptcy Court erred by commenting on the credibility of witnesses in its decision.[40]  Frost Bank disagrees.[41]  The Fifth Circuit has repeatedly held that Bankruptcy Courts are "in the best position to judge the credibility of any witness who testifies under oath before it"[42] and deference to such determinations is proper for reviewing courts.[43]  This Court will not butt in and find fault with the bankruptcy court's judgments on the credibility of witnesses in its own

---

[38] [Doc. 17] at 64.

[39] [Doc. 1-1] at 37.

[40] [Doc. 17] at 70–73.  Lawrence does not cite a single legal source to support his unstated premise that a bankruptcy court cannot consider the credibility of witnesses and comment on this consideration in its findings.

[41] [Doc. 28] at 70–71.

[42] *In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991).

[43] *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009).

proceedings.[44] The Court therefore affirms the decisions of the bankruptcy court on these matters.

### O.     Time Limits (Issue 26)

Finally, Lawrence argues that the Bankruptcy Court erred by limiting his time to present his case in chief to less time than Frost Bank took to present its case.[45] This, he concludes, demonstrates that the bankruptcy court "had made up its mind how it was going to ultimately rule in this case before the trial ever began."[46]

At trial, the Bankruptcy Court "has broad discretion in managing [its] docket, including trial procedure and the conduct of trial."[47]  Lawrence offers no legal authority to buttress the argument that his conclusory allegations about the bankruptcy judge's state of mind can serve as appropriate grounds for reversal.[48] The Court rejects Lawrence's assertion that the Bankruptcy Court exhibited prejudice by giving him five hours in total to put on his case-in-chief.[49]

\*     \*     \*

---

[44] *See Matter of Tex. Mortg. Servs. Corp.*, 761 F.2d 1068, 1078 (5th Cir. 1985); *see also* David Strathairn: Noah Vosen, THE BOURNE ULTIMATUM (Universal Pictures 2007), https://www.imdb.com/title/tt0440963/characters/nm0000657 (instructing a fellow CIA operative not to "second-guess an operation from an armchair").

[45] [Doc. 17] at 74–75.

[46] *Id.* at 74.

[47] *Sims v. ANR Freight Sys.*, 77 F.3d 846, 849 (5th Cir. 1996).

[48] In fact, he does precisely the opposite, stating that "[t]his issue, standing alone, is not cause for a reversal . . . ." [Doc. 17] at 74.

[49] *Id.*

The Court **AFFIRMS** the Bankruptcy Court's findings of fact and conclusions of law for the reasons stated above.

**IT IS SO ORDERED** this 4th day of January, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE